Joshua D. Bendor, 031908
Brandon T. Delgado, 035924
OSBORN MALEDON, P.A.
2929 North Central Ave., Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
jbendor@omlaw.com
bdelgado@omlaw.com

Orion Danjuma *(pro hac vice to be filed)*
NY Reg No. 4942249
PROTECT DEMOCRACY PROJECT
82 Nassau St. #601
New York, NY 10038
Tel: (202) 579-4582
orion.danjuma@protectdemocracy.org

Rachel F. Homer *(pro hac vice)*
DC Bar No. 1045077
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Avenue NW, #163
Washington, DC 20006
Tel: (202) 579-4582
rachel.homer@protectdemocracy.org

Benjamin L. Berwick *(pro hac vice)*
MA Bar No. 679207
PROTECT DEMOCRACY PROJECT
15 Main Street, Suite 312
Watertown, MA 02472
Tel: (202) 579-4582
ben.berwick@protectdemocracy.org

Jared Davidson *(pro hac vice to be filed)*
LA Bar No. 37093
PROTECT DEMOCRACY PROJECT
3014 Dauphine Street, Suite J
New Orleans, LA 70117
Tel: (202) 579-4582
jared.davidson@protectdemocracy.org

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| League of Women Voters of Arizona,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Lions of Liberty LLC; Yavapai County Preparedness Team; Jim Arroyo, Lucas Cilano; Nicholas Cilano; Brian Mounsey; Toby Fox; Bruce Mounsey; James Johnson; Melody Jennings; Clean Elections USA; John Does 1-10,<br><br>　　　　　　Defendants. | No. CV-22-08196-PCT-MTL<br><br>**MOTION TO FILE THE LODGED DECLARATION UNDER SEAL** |

Pursuant to Local Rule 5.6, Plaintiff League of Women Voters of Arizona ("League") moves to file under seal the Declaration that it Lodged alongside this Motion

("the Lodged Declaration") in support of the League's Motion for a Temporary Restraining Order and Preliminary Injunction ("TRO Motion").

Contemporaneously with this Motion, Plaintiff has filed a redacted version of the Lodged Declaration on the public record. The only items redacted from the publicly-filed version are the references to the declarant's name and identifying details. This Motion simply asks the Court for the Lodged Declaration, which includes the declarant's name and identifying details, to be filed under seal.

## INTRODUCTION

On October 25, 2022, the League filed a case alleging unlawful voter intimidation against Defendants Lions of Liberty LLC, Yavapai County Preparedness Team, their officers, Melody Jennings, and Clean Elections USA. The League's members as well as non-League members have been confronted by Defendants and their followers surveilling drop boxes throughout Yavapai County and Maricopa County, leading to these voters and other individuals who have not yet voted to become intimidated and scared to vote.

Today, Plaintiff filed its TRO Motion pursuant to Federal Rule of Civil Procedure 65, asking the Court to bar Defendants, their co-conspirators, and all of their volunteers and agents, from engaging in unlawful voter intimidation at or near all drop boxes in Yavapai County and Maricopa County. Along with TRO Motion, Plaintiff is filing declarations from people who have encountered Defendants while attempting to exercise their constitutional right to vote.

Plaintiff now moves to file one such declaration, the Lodged Declaration, under seal so that the declarant's name and identifying details do not become public. There are compelling reasons for Plaintiff's motion to seal the Lodged Declaration, the most important of which is to protect the safety and privacy of the declarant, who has already been targeted in person and slandered online by Defendant Melody Jennings and her associates.

2

**STATEMENT OF FACTS**

The Lodged Declaration was written by a person who went with his wife to a ballot drop box at the Maricopa Juvenile Court in Mesa the evening of October 17, 2022, to fulfill what he refers to as his "civic duty" to vote. Decl. ¶¶ 3-4.  When he arrived, he encountered a group of six to nine men and women in the parking lot, nearby the drop box. *Id.* ¶ 5.  Some of these individuals sat in camping chairs, and others stood nearby; all were facing the drop box, watching voters deposit their ballots. *Id.* ¶ 5.  These individuals were filming and photographing people voting at the drop box. *Id.* ¶ 6.

Declarant's wife wanted to leave upon seeing these individuals. *Id.* ¶ 7.  She did not even want to stay to drop off her ballot because she was scared. *Id.*  But the declarant insisted on getting out of the car to drop off both his ballot and his wife's while she stayed in the car. *Id.* ¶ 8.

Declarant's wife was worried that these individuals would use their cameras to zoom in on their phone numbers on their ballots and then harass them. *Id.* ¶ 9.  To prevent that from happening, the declarant put the two ballots under his shirt when he got out of the car. *Id.*

As he got out of the car, four of the people in the camping chairs came up to him, followed him, and took pictures of him. *Id.* ¶ 10.  Two of the people asked if he was a "mule." *Id.* ¶ 11.  One person attempted to take pictures of his car's license plate. *Id.* ¶ 12.  Another person told him that the group was "hunting mules." *Id.* ¶ 13.  The declarant became frustrated that they were accusing him of doing something illegal, and he made a crude gesture and crude remark to them. *Id.* ¶ 14.  After depositing the two ballots and returning to his car, he reversed out of the parking lot so that he did not need to drive past the group. *Id.* ¶ 15.  But then one of the self-proclaimed "mule-hunters" got into his or her car and followed the declarant's car onto the main road, attempting to take a picture of the declarant's license plate. *Id.* ¶ 16.

The declarant reported this incident to the Arizona Secretary of State; the media soon obtained the complaint made to the Secretary of State, as well as a surveillance video of the interaction. *Id.* ¶¶ 17-18. The declarant did not talk with the media. *Id.* at ¶ 18. As of this filing, his name and likeness have not been made public by the Secretary of State or media. *Id.* at ¶¶ 17-18; *see also* Ex. A to Decl. (Secretary of State Complaint) (showing that the declarant's name was redacted); Ex. B to Decl. (Surveillance Video) (showing that the declarant's image was blurred).

Since the incident, however, Defendant Jennings and a person named Alice Bagley Mercer have posted about the declarant on social media. Decl. ¶ 19; Ex. D to Decl.; Ex. E to Decl.; Ex. F to Decl. They have posted pictures of his car and his back; they have publicly called him a "mule"; and they have said that they have to "regroup" due to the incident to ensure they have people "at all angles now" to photograph voters. Ex. D to Decl. They discussed on social media that the declarant "talk[ed] smack to us," and they publicly called his actions a "disgusting" example of "how our elections are corrupt." *Id.* Defendant Jennings has referred to the declarant as "This guy." Ex. E to Decl. And she has accused of him "avoid[ing] plate detection," "showing his back," and "pull[ing] ballots out of his shirt." *Id.* Based on this encounter, she has called on her followers: "I need people there tonight to help my people. Lots of you!" *Id.* In another post, she made a "Public statement" about the incident. Ex. F. to Decl. The statement implies that those affiliated from Clean Elections USA were at the drop box surveilling that night. *Id.* Her post denies that they were the ones who spoke to the declarant. *Id.*

The declarant and his wife are scared that these individuals will harass and threaten their safety if they find out their names from a public declaration. *Id.* ¶ 20.

## **LEGAL AUTHORITY**

The Ninth Circuit has held that documents in support of a motion, like the one contemplated here, can be sealed when "compelling reasons" exist. *Ctr. for Auto Safety*

4

1  *v. Chrysler Grp. LLC*, 809 F.3d 1092, 1098 (9th Cir. 2016). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, [and] circulate libelous statements[.]" *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (internal citations omitted).

Additionally, the Ninth Circuit has held that there may be "compelling interest" in protecting a person's "safety and privacy" such that redacting the person's name from a public affidavit is appropriate while the unredacted affidavit remains sealed. *In re Ares Armor*, 687 F. App'x 622 (9th Cir. 2017). In *Ares Armor,* the Ninth Circuit held that this kind of redaction was particularly appropriate where there was an online posting about the affiant, and the online posts had implied or encouraged violence. *Id.* at 624-625. In such a circumstance, redacting the person's name from an otherwise-public affidavit, and keeping the version with the affiant's name sealed, is the least "restrictive means available to safeguard that [compelling] interest in [safety and privacy]." *Id*.

Here, Defendant Jennings and Alice Bagley Mercer have already defamed and slandered the declarant by falsely accusing him of doing something illegal. They have already publicized the incident in an attempt to prove a debunked conspiracy theory. The declarant is credibly concerned that a public declaration that includes his name and identifying details could lead to Defendant Jennings, Alice Bagley Mercer, their followers, and other individuals to then publicize his name for "private spite," "public scandal," and further "libelous statements" accusing him of being a "mule."

More importantly, the declarant's safety and privacy are at risk—a compelling reason to seal his identity. Like the online postings in *Ares Armor*, the social media posts here imply and encourage violence: they call on militant followers to surveil more drop boxes and implicitly threaten the declarant himself. Ex. D to Decl.; Ex. E to Decl.;

5

Ex. F to Decl.  Defendant Jennings has called on her followers to "help" and says that she needs "lots of" followers to come out due to the incident with the declarant.  Ex. E to Decl.  And these social media posts have explicitly discussed the declarant as a "mule" or "this guy," reasonably causing the declarant concern that if the Defendants and their followers obtain his actual name, they will be able to find out more information about him—potentially including his telephone number and address—leading to further (and escalating) harassment and privacy violations.

All in all, the least restrictive means of safeguarding the declarant's safety and privacy and preventing further libel is to allow his Lodged Declaration to be filed under seal while a redacted copy is filed publicly.

### III. CONCLUSION

For the foregoing reasons, the League respectfully requests permission to file the Lodged Declaration under seal in accordance with Local Rule 5.6(d).

DATED this 28th day of October, 2022.

                        OSBORN MALEDON, P.A.

                    By <u>s/ Joshua D. Bendor</u>
                        Joshua D. Bendor
                        Brandon T. Delgado
                        2929 North Central Avenue, Suite 2100
                        Phoenix, Arizona 85012-2793

                        Orion Danjuma *(pro hac vice to be filed)*
                        PROTECT DEMOCRACY PROJECT
                        82 Nassau St. #601
                        New York, NY 10038

                        Rachel F. Homer *(pro hac vice)*
                        PROTECT DEMOCRACY PROJECT
                        2020 Pennsylvania Avenue NW, #163
                        Washington, DC 20006

                        Benjamin L. Berwick *(pro hac vice)*
                        PROTECT DEMOCRACY PROJECT
                        15 Main Street, Suite 312
                        Watertown, MA 02472

                        Jared Davidson *(pro hac vice to be filed)*
                        PROTECT DEMOCRACY PROJECT
                        3014 Dauphine Street, Suite J
                        New Orleans, LA 70117

                        Attorneys for Plaintiff